[No. 38560.    En Banc.    January 12, 1967.]

THE DEPARTMENT OF GAME et al., Respondents, v. NUGENT KAUTZ et al., Appellants. *

*Jack E. Tanner,* for appellants.

*The Attorney General, Joseph L. Coniff* and *Mike Johnston, Assistants,* for respondents.

HILL, J.—This is an action by the Department of Game of the State of Washington and the Department of Fisheries of the State of Washington, hereinafter called the Departments, against 12 named individuals and a John Doe, all of whom it is alleged, "have threatened and are fishing extensively in the Nisqually River with set nets and drift nets," under a claim of special privileges or immunities from the conservation laws of the State of Washington.

The Departments alleged that if the defendants' net fishing was permitted to continue the anadromous fish[1] runs of the Nisqually River would be virtually exterminated.

*Reported in 422 P.2d 771.

---

[1] For an understanding of an "anadromous" fish, see opinions by Judge Rosellini in *State v. McCoy,* 63 Wn.2d 421 at page 426 *et seq.,* 387 P.2d 942 (1963), and his concurring opinion in *State v. Satiacum,* 50 Wn.2d 513, 531 *et seq.,* 314 P.2d 400 (1957).

The Departments sought a judgment, holding that the defendants are not entitled to any privileges or immunities from the application of state conservation measures, and that they be restrained from netting anadromous fish in the Nisqually River or any of its tributaries.

The Nisqually Tribe[2] and the Puyallup Tribe, with numerous others, were signators to the Treaty of Medicine Creek and entitled to certain rights thereunder, which rights have previously been discussed in the companion case (No. 38611) filed this day involving the Puyallup Tribe of Indians (*ante* p. 245, 422 P.2d 754).

In this case, there is no question as to the continuation of the Nisqually Tribe or as to the existence of the Nisqually Indian Reservation.

It is stipulated that the defendants are Nisqually Indians and that "usual and accustomed fishing grounds"[3] (within the meaning of the Treaty of Medicine Creek) encompass the whole of the Nisqually River and its tributaries downstream from the reservation.

It is stipulated further:

4) The defendants began engaging in an open net fishery for salmon and steelhead at the usual and accustomed grounds in 1960, and have, since that date, continued to fish contrary to state fishing conservation laws and regulations.

5) If permitted to continue, the defendants' commercial fishery would virtually exterminate the salmon and steelhead fish runs of the Nisqually River.

6) The plaintiffs have expended a substantial amount of public monies to maintain the anadromous fish runs of the Nisqually River and it is necessary for proper conser-

[2]The Nisqually Tribe was not made a defendant in this action. The trial court entered an order "that the Nisqually Indian Tribe be and is hereby joined as a party defendant to this cause and it is further ordered that they be so summoned." The only proof of being "summoned" is that a copy of the order was served on the wife of the chairman of the Nisqually Indian Community Council at his residence. The tribe never appeared; no default was ever entered.

[3]The Medicine Creek Treaty refers to "all usual and accustomed fishing grounds and stations."

vation of the salmon and steelhead fish runs of the Nisqually River [within the meaning of *State v. McCoy*, 63 Wn.2d 423 (1963)] that the plaintiffs enforce state fishery conservation laws and regulations to the fishing activities of the defendants at their usual and accustomed grounds.

We have here the extreme case: It is stipulated that the "defendants' commercial fishery would virtually exterminate the salmon and steelhead fish runs of the Nisqually River"; that the enforcement of the conservation laws and regulations are necessary for the proper conservation of the salmon and steelhead fish runs; nevertheless, the defendants asserted in the trial court and assert here that their right to fish as they please is not subject to any interference by the Departments. They challenged the jurisdiction of the superior court to consider the cause of action and its right to restrict in any way their treaty rights.

The superior court held that it did have jurisdiction to hear the matter and permanently enjoined the defendants[4] from fishing in the Nisqually River watershed without the boundaries of the Nisqually Reservation in any manner that is contrary to the laws of the State of Washington or contrary to the rules and regulations of the Departments.

We agree with the trial court that it did have jurisdiction to hear the cause and to enter its order. When Indians seek to enjoin claimed interference with their treaty rights, they usually invoke the jurisdiction of the federal courts, as did the Makah Tribe in the *Schoettler*[5] and *McCauley*[6] cases, and the Confederated Tribes of the Umatilla Reservation in the *Maison*[7] case.

---

[4]The state asserts in its brief (p. 4) that the Nisqually Tribe was joined as an additional party defendant and is bound by the injunction. See Note 2 for the only indication in the record that the tribe was made a party defendant. We do not pass upon the issue of whether the tribe is included in the defendants, who are enjoined.

[5]*Makah Indian Tribe v. Schoettler*, 192 F.2d 224 (9th Cir. 1951).

[6]*McCauley v. Makah Indian Tribe*, 128 F.2d 867 (9th Cir. 1942). .

[7]*Maison v. Confederated Tribes of the Umatilla Indian Reservation*, 314 F.2d 169 (9th Cir. 1963).

When a state seeks to enforce its laws and the regulations made thereunder, in furtherance of its police power, to conserve its fish and game, it invokes the jurisdiction of the state court as in the Tulee,[8] Becker,[9] and Race Horse[10] cases, and the claimed interference with treaty rights becomes a matter of defense.

The United States brought one action to enforce Indian treaty rights in our territorial court,[11] and another in the Circuit Court of the United States for the District of Washington.[12]

In the final analysis, irrespective of which route has been pursued—federal courts or territorial and state courts—the Supreme Court of the United States can be requested to determine the rights of the contesting parties, if an interpretation of a treaty between an Indian tribe and the United States is involved.

We find nothing in any of the cases dealing with Indian treaty rights which would indicate that a state does not have jurisdiction over a violation of its conservation laws or the regulations issued thereunder by an Indian at a locus in quo within the state and outside a reservation. Should the state trial court and this court fail to properly interpret the off-reservation treaty rights of an Indian, the Supreme Court of the United States is available for a final determination. A state court has the right to be wrong in such a case, and we find no support for the challenge of the defendants to the jurisdiction of the superior court.

We have considered in the companion *Puyallup* case, *supra,* the extent of the right of Indians to fish at "all usual and accustomed grounds and stations," accorded them by the various treaties, and have concluded that their

---

[8]*Tulee v. Washington,* 315 U. S. 681, 86 L. Ed. 1115, 62 Sup. Ct. 862 (1941).

[9]*New York ex rel. Kennedy v. Becker,* 241 U. S. 556, 60 L. Ed. 1116, 36 Sup. Ct. 705 (1916).

[10]*Ward v. Race Horse,* 163 U. S. 504 (1896).

[11]*United States v. Taylor,* 3 Wash. Terr. 88 (1887).

[12]*United States v. Winans,* 198 U. S. 371, 49 L. Ed. 1089, 25 Sup. Ct. 662 (1905).

off-reservation fishing rights are—together with those of other citizens of the state—subject to regulations necessary for the preservation of the fishery. Repetition of that discussion would seem to be unnecessary.

The defendants having stipulated that their commercial fishing, if permitted to continue, would virtually exterminate the salmon and steelhead fish runs; and that the enforcement of the regulations of the Departments is necessary for proper conservation of the salmon and steelhead fish runs, it would follow that their fishing in violation of those regulations should be enjoined.

Apparently the reason for an appeal, in the face of such stipulations, is to raise the jurisdictional issue (already disposed of) and the issue raised by the language in the opinion in *Maison v. Confederated Tribes of the Umitilla Indian Reservation* (see note 7), which would place upon the state the burden of showing that its particular regulation or regulations limiting the off-reservation fishing rights reserved by the treaties[13] must be "indispensable" to accomplish the purpose for which they are intended—the preservation of the fishery.

We have, in the *Puyallup* case, *supra*, indicated our disagreement with the "indispensable" test and our adherence to the "reasonable and necessary" test, as stated in *State v. McCoy* (see note 1).

While we agree that under the stipulation an injunction was proper, it should not be permanent. The stipulation was not that *all future* state conservation laws and regulations will be necessary for the proper conservation of the salmon and steelhead fish runs, and the injunction should apply only to violations of the statutes and regulations stipulated to be presently necessary to the conservation of the salmon and steelhead fish runs on the Nisqually River.

[13]Whether the off-reservation fishing rights are reserved to the Indians by the treaty, or granted to them by the treaty, may become of importance. Our own Territorial Supreme Court (see note 11) in an opinion written by Associate Justice John P. Hoyt in 1887, held that they were reserved rights; and the Supreme Court of the United States expressed the same view in *United States v. Winans* (see note 12).

In view of the scope of the stipulations, the tailoring of the injunction to meet a specific situation, as in the *Puyallup* case, *supra,* is not necessary.

The cause will be remanded to the superior court for a proper limitation of the injunction. The respondents will recover their costs on this appeal, the remand not being on any issue raised by the appellants.

FINLEY, C. J., WEAVER and HAMILTON, JJ., and LANGEN-BACH, J. Pro Tem., concur.

DONWORTH, J. (concurring in part and dissenting in part)—This case involves the treaty rights of the appellant Nisqually Indians to fish at the usual and accustomed fishing grounds and stations under the Treaty of Medicine Creek.

I agree with the majority in holding that the trial court had jurisdiction of this controversy, but I do not agree with the majority's disposition of this case for the reasons stated by me in the companion case (No. 38611) involving the Puyallup Tribe (*ante* p. 245, 422 P.2d 754).

In the instant case, appellants have stipulated to the facts quoted in the majority opinion. It seems ironic that appellants in this case have thus admitted facts which, in my opinion, the respondent state departments were unable to prove by a preponderance of the evidence in the *Puyallup* case.

Nevertheless, I would reverse the trial court's injunctive decree and direct that the action be dismissed for the three reasons which I stated in the *Puyallup* cases. Even with the facts admitted in the stipulation, the reasons which I discussed therein are still applicable to the present case.

The majority opinion states that, if this court fails to interpret correctly appellants' treaty rights to fish off the reservation, the United States Supreme Court is available for a final determination of the case. This is theoretically true, but we should not overlook the fact that the Supreme Court has twice declined to review either of two cases (one from a state supreme court and one from a United States

court of appeals) in which the constitutional status of a similar Indian treaty was brought into question.

See *State v. Arthur*, 74 Ida. 251, 261 P.2d 135 (1953), in which certiorari was denied 347 U. S. 937, 98 L. Ed. 1087, 74 Sup. Ct. 627 (1954), and *Maison v. Confederated Tribes of the Umatilla Indian Reservation*, 314 F.2d 169 (9th Cir. 1963), in which certiorari was denied 375 U. S 829, 11 L. Ed. 2d 60, 84 Sup. Ct. 73 (1963).

Nevertheless, the important questions involved in the present two companion cases would seem to justify an authoritative determination of the constitutional status of these Indian treaties by the only tribunal competent to finally decide them.

HUNTER, J. (dissenting)—I dissent to the modification of the trial court's injunction for the same reasons stated in my dissent to *Department of Game v. Puyallup Tribe, ante* p. 245, 422 P.2d 754 (1967).

ROSELLINI and HALE, JJ., concur with HUNTER, J.

March 2, 1967. Petition for rehearing denied.