## TULEE *v.* STATE OF WASHINGTON.

No. 318. Argued March 3, 1942.—Decided March 30, 1942.

*Mr. Nathan R. Margold,* with whom *Solicitor General Fahy* and *Mr. Kenneth R. L. Simmons* were on the brief, for appellant.

*Mr. T. H. Little,* Assistant Attorney General of the State of Washington, with whom *Messrs. Smith Troy,* Attorney General, and *E. P. Donnelly* were on the brief, for appellee.

*Mr. I. H. Van Winkle,* Attorney General of Oregon, filed a brief on behalf of the State of Oregon, as *amicus curiae,* urging affirmance.

MR. JUSTICE BLACK delivered the opinion of the Court.

The appellant, Sampson Tulee, a member of the Yakima tribe of Indians, was convicted in the Superior Court for Klickitat County, Washington, on a charge of catching salmon with a net, without first having obtained a license as required by state law.[1]  The Supreme Court of Washington affirmed. 7 Wash. 2d 124, 109 P. 2d 280. The case is here on appeal under 237(a) of the Judicial Code, 28 U. S. C. 344(a), the appellant challenging the validity of the Washington statute, as applied to him, on the ground that it was repugnant to a treaty made between the United States and the Yakima Indians.

In 1855, the Yakimas and other Indians owned and occupied certain lands in the Territory of Washington, which the United States wished to open up for settlers. May 29, 1855, representatives of the Government met in council with representatives of the Indians, and after extended discussions lasting until June 11, the Indians agreed to a treaty, under which they were to cede 16,920 square miles of their territory, reserving 1,233 square miles for the confederated tribes represented at the meeting. As consideration for the cession by the Indians, a cession which furthered the national program of transforming wilderness into populous, productive territory,

---

[1] "It shall be unlawful to catch, take or fish for food fish with any appliance or by any means whatsoever except with hook and line . . . unless license so to do has been first obtained. . . ." Remington's Revised Statutes of Washington, § 5693. "For each dip bag net license for the taking of salmon on the Columbia River, [the license fee shall be] five dollars. . . ." *Id.* (vol. 7, 1940 supp.), § 5703.

the Government agreed to pay $200,000; to build certain schools, shops, and mills and keep them equipped for twenty years; to erect and equip a hospital; and to provide teachers and various helpers for twenty years. This agreement was ratified and proclaimed as a treaty in 1859. 12 Stat. 951.

The appellant claims that the Washington statute compelling him to obtain a license in order to fish for salmon violates the following provision of Article III of the treaty:

"The exclusive right of taking fish in all the streams, where running through or bordering said reservation, is further secured to said confederated tribes and bands of Indians, as also the right of taking fish at all usual and accustomed places, in common with citizens of the Territory, and of erecting temporary buildings for curing them; together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle upon open and unclaimed land."

The state does not claim power to regulate fishing by the Indians in their own reservation. *Pioneer Packing Co. v. Winslow,* 159 Wash. 655, 294 P. 557. Nor does it deny that treaty rights of Indians, whatever their scope, were preserved by Congress in the act which created the Washington Territory and the enabling act which admitted Washington as a state. 10 Stat. 172; 25 Stat. 676. Relying upon its broad powers to conserve game and fish within its borders,[2] however, the state asserts that its right to regulate fishing may be exercised at places like the scene of the alleged offense, which, although within the territory originally ceded by the Yakimas, is outside of their reservation. It argues that the treaty should not be con-

[2] *Geer* v. *Connecticut,* 161 U. S. 519; *Ward* v. *Race Horse,* 163 U. S. 504, 507; *Patsone* v. *Pennsylvania,* 232 U. S. 138; *Lacoste* v. *Dept. of Conservation,* 263 U. S. 545, 549.

strued as an impairment of this right, and that, since its license laws do not discriminate against the Indians, they do not conflict with the treaty. The appellant, on the other hand, claims that the treaty gives him an unrestricted right to fish in the "usual and accustomed places," free from state regulation of any kind. We think the state's construction of the treaty is too narrow and the appellant's too broad; that, while the treaty leaves the state with power to impose on Indians, equally with others, such restrictions of a purely regulatory nature concerning the time and manner of fishing outside the reservation as are necessary for the conservation of fish,[3] it forecloses the state from charging the Indians a fee of the kind in question here.

In determining the scope of the reserved rights of hunting and fishing, we must not give the treaty the narrowest construction it will bear. In *United States* v. *Winans,* 198 U. S. 371, this Court held that, despite the phrase "in common with citizens of the Territory," Article III conferred upon the Yakimas continuing rights, beyond those which other citizens may enjoy, to fish at their "usual and accustomed places" in the ceded area; and in *Seufert Bros. Co.* v. *United States,* 249 U. S. 194, a similar conclusion was reached even with respect to places outside the ceded area. From the report set out in the record before us, of the proceedings in the long council at which the treaty agreement was reached, we are impressed by the strong desire the Indians had to retain the right to hunt and fish in accordance with the immemorial customs of their tribes. It is our responsibility to see that the terms of the treaty are carried out, so far as possible, in accordance with the meaning they were understood to have by the tribal representatives at the council, and in a

---

[3] Cf. *Kennedy* v. *Becker*, 241 U. S. 556. See *United States* v. *Winans, supra,* 384.

spirit which generously recognizes the full obligation of this nation to protect the interests of a dependent people. *United States* v. *Kagama*, 118 U. S. 375, 384; *Seufert Bros. Co.* v. *United States, supra*, 198–199.

Viewing the treaty in this light, we are of the opinion that the state is without power to charge the Yakimas a fee for fishing. A stated purpose of the licensing act was to provide for "the support of the state government and its existing public institutions." Laws of Washington (1937) 529, 534. The license fees prescribed are regulatory as well as revenue producing. But it is clear that their regulatory purpose could be accomplished otherwise, that the imposition of license fees is not indispensable to the effectiveness of a state conservation program. Even though this method may be both convenient and, in its general impact, fair, it acts upon the Indians as a charge for exercising the very right their ancestors intended to reserve. We believe that such exaction of fees as a prerequisite to the enjoyment of fishing in the "usual and accustomed places" cannot be reconciled with a fair construction of the treaty. We therefore hold the state statute invalid as applied in this case.

The judgment of the Supreme Court of Washington is

*Reversed.*