(No. 7101.  June 30, 1943.)

THE STATE OF IDAHO, Respondent, v. JOHN McCON-VILLE, Appellant.

[139 Pac. (2d) 485.]

Leo McCarty for appellant.

48

Bert H. Miller, Attorney General, and J. R. Smead, Assistant Attorney General, for respondent.

GIVENS, J.—Appellant, a member of the Nez Perce tribe of Indians, was arrested for fishing without a state fish and game license in Catholic Creek, a seasonal stream tributary to the Clearwater River, originally within the confines of the Nez Perce Indian Reservation. The territory immediately adjoining said stream at the time the reservation was opened and allotments made in 1887 (24 Stat. 388; 28 Stat. 326, I Kappler 536) was never transferred to any Indian but sold to white settlers.

The defense interposed, considered and rejected by the trial court, a jury being waived, was that under the original treaty of 1855 (12 Stat. 957, II Kappler 702[1]) negotiated between the Nez Perce and other tribes and Governor Isaac I. Stevens, for the United States government, at Camp Stevens in Walla Walla Valley, at what was known as the "Long Council", and the succeeding series of treaties (14 Stat. 647, II Kappler 843[2]; 15 Stat. 693, II Kappler 1024; 24 Stat. 388; 28 Stat. 326[3]), the state had no authority to require as a prerequisite to fishing by any member of such tribe a state fish and game license.

---

[1]"The exclusive right of taking fish in all the streams where running through or bordering said reservation is further secured to said Indians; as also the right of taking fish at all usual and accustomed places in common with the citizens of the Territory; * * *"

[2]"Article 8. It is also understood that the aforesaid tribe do hereby renew their acknowledgments of dependence upon the Government of the United States, their promises of friendship, and other pledges, as set forth in the eighth article of the treaty of June 11, 1855; and further, that all the provisions of said treaty which are not abrogated or specifically changed by any article herein contained, shall remain the same to all intents and purposes as formerly—the same obligations resting upon the United States, the same privileges continued to the Indians outside of the reservation, and the same rights secured to citizens of the U.S. as to right of way upon the streams and over the roads which may run through said reservation, as are therein set forth."

[3]"The existing provisions of all former treaties with said Nez Perce Indians not inconsistent with the provisions of this agreement are hereby continued in full force and effect." (Art. XI.)

*Tulee v. Washington,* 315 U.S. 681, 86 L. ed. 1115, held the State of Washington, because of a simultaneous and similar treaty with the Yakimas, had no right to require a fishing license from a member of that tribe; in other words, sustaining appellant's position.

The state herein urges the Tulee case is not fully determinative of the issues herein because it did not involve or consider the effect of allotments to the Indians plus purchase of the remaining reservation lands by the government, under the Dawes Act (24 Stat. 388), opening of the purchased lands to and acquisition by white settlers under that act (28 Stat. 326) and omission in our admission bill to refer to Indians or their reserved rights.

While the Supreme Court of the United States did not by specific enumeration pass upon all of these points, they were in effect raised in the action when it was before the Supreme Court of the state (*State v. Tulee,* 7 Wash. (2d) 124, 109 P. (2d) 280), and by reason of the reversal of the state decision by the Supreme Court of the United States and its refusal to follow the cases therein urged, as herein, the latter court in effect held nugatory and of no avail these propositions now advanced by the state herein. The decision of the United States Supreme Court in the Tulee case is a comprehensive and complete vindication of the right of the Indian to fish without a license by reason of the rights reserved to him, not granted, in the original treaty and by successive treaties reaffirmed, or, at least, not abrogated.

"Nothing that the state can do will be allowed to destroy the federal right which is to be vindicated; but in defining the extent of that right its relation to the operation of state laws is relevant. The state will not be allowed to invade the immunities of Indians, no matter how skilful its legal manipulations." (*Jackson County v. United States,* 308 U.S. 343, 84 L. ed. 313.)

The state urges that when the reservation was thrown open to settlement if the Indians had desired to retain the right to fish, as now contended for, there should have been a provision to that effect in the law or treaty. Such was not necessary, however, because the Indians were granting; consequently, anything not specifically granted was retained. Certainly there is nothing in any of the statutes or treaties subsequent to 1855 indicating in the slightest degree that the Indians ever intended to or under-

stood that by selling land to the United States they were giving up the right to fish as they had immemorially done, and the treaties subsequent thereto specifically reserved all the rights not given:

"Article 8. It is also understood that the aforesaid tribe do hereby renew their acknowledgments of dependence upon the Government of the United States, their promises of friendship, and other pledges, as set forth in the eighth article of the treaty of June 11, 1855; and further, that all the provisions of said treaty which are not abrogated or specifically changed by any article herein contained, shall remain the same to all intents and purposes as formerly— the same obligations resting upon the United States, the same privileges continued to the Indians outside of the reservation, and the same rights secured to citizens of the U.S. as to right of way upon the streams and over the roads which may run through said reservation, as are therein set forth." (Treaty with the Nez Perce, 1863, II Kappler 846, 14 Stat. 651.)

"The existing provisions of all former treaties with said Nez Perce Indians not inconsistent with the provisions of this agreement are hereby continued in full force and effect." (28 Stat. 331.)

Private ownership of some lands is not inconsistent with the right to fish without a license.

The state urges that, the land surrounding this stream now being owned by white men, the Indian had no right to fish therein. There is, however, no question of trespass in this case, the sole question being the right to fish without a fish and game license. It is conceded this territory was originally within the geographical limitations of the reservation, and there was direct testimony that it was one of the places where the Indians had customarily fished. Even though it is a seasonal stream, it apparently contained fish, and the Indian on the day he was arrested had caught some.

The broad interpretation by the Supreme Court in the Tulee case not only justifies but demands, since it is ultimately a federal question, that in adhering thereto we sustain appellant's right as contended for by him.[4]

[4]"Section 3. State inseparable part of Union.—The state of Idaho is an inseparable part of the American Union, and the constitution of the United States is the supreme law of the land." (Art. 1, sec. 3, Idaho Constitution.)

There is a clear distinction between the requirement of a license and regulation as to the seasons, places, etc., of taking fish and game as considered in *Ward v. Race Horse,* 163 U. S. 504, 41 L. ed. 244, and inferentially so distinguished in the Tulee case. We pass only upon the former.

The judgment of conviction is reversed and the cause remanded with instructions to discharge appellant.

Holden, C.J., Ailshie, Budge, and Dunlap, JJ., concur.

"This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." (Art. VI, United States Constitution.)