MAKAH INDIAN TRIBE et al. v.
SCHOETTLER, Director of the
Department of Fisheries.

No. 12751.

United States Court of Appeals
Ninth Circuit.

Oct. 27, 1951.

J. Duane Vance, and Bassett & Geisness, all of Seattle, Wash., for appellants.

Smith Troy, Atty. Gen., T. H. Little, Chief Asst. Atty. Gen., John J. O'Brien, Special Asst. Atty. Gen., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment dismissing a complaint of the Makah Indian Tribe seeking injunctive relief against the operation of certain Washington state fishing regulations prohibiting their accustomed fishing in the Hoko River. The regulations in question prohibit all catching of fish in that river save by one pole and line with two single hooks or one artificial bait per person.

The Hoko River is a fresh water stream of some 25 to 50 feet in width in Northwestern Washington, emptying into the Straits of Juan de Fuca at a distance of some 18 miles from the Pacific Ocean and 10 miles easterly from the Makah Indian Reservation. It is a part of the area ceded by the Makahs to the United States in their treaty of 1855[1] in return for which they received the treaty rights in fishing, hereafter considered.

In September and October the stream has a run of silver salmon which is the subject of the Makahs suit. The respondent's witnesses admit the salmon do not eat after entering the fresh water stream and hence can be caught but rarely on a baited or lured hook. In effect, there is a closing of the stream to all taking of the fall salmon for any purpose, whether for personal or commercial use.

It also appears that the regulation is not necessary for the maintenance of the salmon run in the stream. The run could be fully preserved by a partial stopping of the fishing during the run to permit the upstream movement of a sufficient number for propagation, as is done in other streams.

The only ground given for not making such a regulation is the cost of inspection during that brief portion of the two months' fall run when the stream is to be kept closed to fishing for the passage of the breeding fish. There is no merit in this contention for if the Makahs would have to be inspected to prevent their taking of salmon during the closed portion of the two months, *a fortiori,* they now require inspection for the full two months in which they are not permitted to take any fish. Aside from the absurdity of this contention, we hold that where a treaty gives the Indians a right to fish, the state cannot deny that right because of the cost of preventing their taking of fish in excess of that right.

Furthermore, it appears that, instead of so closing to all effective Indian fishing in the Quinault, Queets, Quillaute and Hoh Rivers and at the estuaries of the Chehalis and Skagit Rivers, Washington now allows gill net fishing there.

It is also admitted that Washington entered into a cooperative non-compulsory system with the Lummi Indians for regulating fishing on the Nooksack River, the provisions of which the Indians have carried out.

We cannot commend Washington's many years of denying the Makahs the fall salmon necessary for their food and support without at least seeking to make such a cooperative agreement with them. The Director of Fisheries at the time of the trial below stated his intention to make such an agreement, strongly indicating that such is one of the forms of giving the Indians their treaty rights.

The Makahs contend that the regulations so closing the Hoko violate Article IV of their treaty of 1855 with the United States, providing, "Article IV. The right of taking fish and of whaling or sealing at usual and accustomed grounds and stations is further secured to said Indians in common with all citizens of the United States, and of erecting temporary houses for the

purpose of curing, together with the privilege of hunting and gathering roots and berries on open and unclaimed lands: Provided, however, That they shall not take shell-fish from any beds staked or cultivated by citizens."

It is admitted that in 1855 the Hoko River was a "usual and accustomed" fishing ground of the Makahs. It is also clear that the salmon of the Hoko's fall run are an essential part of the food supply and support of the 462 surviving Makah Indians.

The appellee contends that because the State of Washington has the regulatory power to close the Hoko to citizens of the United States having no treaty rights to fish there, it has the same power to close the stream to the Makahs having such a treaty. That is to say, that the treaty words "The right of taking fish * * * is further secured to said Indians" is no right at all which the state is bound to respect in making its fishing regulations.

■■ There is no merit in this contention. The Supreme Court has repeatedly held that the Indian treaty fishing provisions accord to them rights against state interference which do not exist for other citizens. Tulee v. State of Washington, 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115; Seufert Bros. Co. v. United States, 249 U.S. 194, 39 S.Ct. 203, 63 L.Ed. 555; United States v. Winans, 198 U.S. 371, 25 S.Ct. 662, 49 L.Ed. 1089.

The Supreme Court held in the Tulee case that where a treaty guarantees certain fishing rights to Indians and a state regulation impairs this right, the state must prove that its regulation is "necessary", and further held that such proof of the regulation there involved had not been made. The Court there said that "the treaty leaves the state with power to impose on Indians equally with others such restrictions of a purely regulatory nature concerning the time and manner of fishing outside the reservation *as are necessary for the conservation of fish* * * *." (Emphasis supplied.) [315 U.S. 681, 62 S.Ct. 864.]

■ We are not here concerned, as we were in McCauley v. Makah Indian tribe, 9 Cir., 128 F.2d 867, with any particular form of regulation. We do not question the right to enact regulations which will permit fishing in the Hoko River to the extent that will give the Makahs their treaty right to fish there without depletion of the fall run of salmon. We hold no more than that the appellee has not sustained its burden of proof that the instant regulations preventing the Makahs from the taking of fish in the Hoko are "necessary for the conservation of fish" in the fall run of salmon in that river.

The decision of the district court is reversed and that court ordered to make and enter an order restraining the appellee from enforcing such regulations.