CONFEDERATED TRIBES OF the UMA-
TILLA INDIAN RESERVATION, and
Elias J. Quaempts, William Minthorn,
David S. Hall, Joseph T. Johnson, Ar-
thur Motanic, Joseph T. Williams, Lou-
ise M. Elk, and Jesse Jones, each on its
or his own behalf and as representative
of the members of the Confederated
Tribes of the Umatilla Indian Reserva-
tion, Pendleton, Oregon; Plaintiffs,

v.

H. G. MAISON, individually, and as Su-
perintendent, Department of State Po-
lice of the State of Oregon; Robert Y.
Thornton, individually, and as Attorney
General of the State of Oregon; J. H.
Van Winkle, Max Wilson, Ralph T. Ren-
ner, Kenneth G. Denman, and Rollin E.
Bowles, individually, and as members
of the State Game Commission of the
State of Oregon; and George L. Ander-
son, individually, and as District Attor-
ney of Union County, Oregon; Defend-
ants.

Civ. No. 77–59.

United States District Court
D. Oregon.

June 10, 1960.

Charles F. Luce, Walla Walla, Wash., Frank E. Nash and Robert S. Summers, Portland, Or., for plaintiffs.

Robert Y. Thornton, Atty. Gen., State of Oregon, and Arthur G. Higgs and Roy C. Atchison, Asst. Attys. Gen, for defendants.

SOLOMON, Chief Judge.

The Confederated Tribes of the Umatilla Indian Reservation and seven individual tribesmen brought this action for a declaratory judgment and an injunction against the Oregon Game Commission and various state law enforcement officials. They contend that State regulations which restrict salmon and steelhead fishing in off-reservation tributaries of the Columbia and Snake Rivers cannot be applied to them because of rights reserved in their tribe's treaty with the United States, executed June 9, 1855, 12 Stat. 945. In particular, plaintiffs claim that their treaty right to take fish at all "usual and accustomed stations" bars the state from prohibiting accustomed Indian fishing in specified streams during any portion of the year.

Salmon and steelhead are anadromous fish which ascend from the ocean to fresh water streams to spawn. By instinct, each fish attempts to return to the stream of its birth. Many obstacles are encountered including natural predators, disease, commercial nets, anglers, dams, and water pollution. Severe decimation of a run of fish in any particular stream can result in the destruction of practically all of the fish in such stream. Experiments in stocking barren streams have been costly and only sporadically successful.

The State contends that the high value of brood stock in preserving individual runs and the extreme vulnerability of fish on the beds justifies closing these streams during spawning seasons. It argues that the regulations in question are essential in preserving the resource.

■■ All of the parties concede that the controlling authorities are Tulee v. State of Washington, 1942, 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115 and Makah Indian Tribe v. Schoettler, 9 Cir., 1951, 192 F.2d 224, 226. Those cases establish that a treaty right to fish in the usual and accustomed places is not unrestricted but "leaves the state with power to impose on Indians equally with others such restrictions of a purely regulatory nature concerning the time and manner

of fishing outside the reservation as are necessary for the conservation of fish." Tulee v. State of Washington, supra, 315 U.S. at page 684, 62 S.Ct. at page 864. However, a state imposing such restrictions must prove them necessary for conservation. Makah Indian Tribe v. Schoettler, supra.

■ I find that defendants have failed to sustain this burden of proof. The fisheries in question have been traditionally utilized by the Indians for subsistence purposes. The number of fish taken by the Indians is a small percentage of the total Columbia River salmon and steelhead harvest. In 1957, the last year for which complete figures are available for these streams, sportsmen took 4,600 breeder fish which had actually arrived at their destined tributaries. Moreover, defendants' expert admitted that a greater escapement of spring chinook salmon to all of the upper Columbia River tributaries than is presently allowed would be beneficial in achieving maximum production, and that it would be good conservation practice to permit larger numbers of fish to reach the spawning beds.

Defendants admit that plaintiffs take these fish solely for subsistence purposes and that none of them are sold commercially. Defendants further admit that plaintiffs have never destroyed a salmon run in these streams or so severely depleted a run that destruction was threatened. Nevertheless, defendants assert that unrestricted Indian fishing on the spawning beds is potentially harmful. However, they have rejected the possibility of arranging substitute sites for plaintiffs on the Columbia River to relieve fishing pressure on the spawning beds and have made no effort to enter into cooperative regulations in order to further conservation goals.

■ Although the closure of streams during portions of the year is one method of conserving the resource and may be generally fair and convenient, it cannot be permitted to curtail treaty fishing rights of Indians where there are alternative methods of attaining the same ob-

jectives. "The Supreme Court has repeatedly held. that the Indian treaty fishing provisions accord to them rights against state interference which do not exist for other citizens." Makah Indian Tribe v. Schoettler, supra, 192 F.2d at page 226.

Plaintiffs shall submit findings of fact, conclusions of law, and a judgment in favor of plaintiffs, all in accordance with this opinion.