382 F.2d 1013
 H. V. HOLCOMB, Individually and as Superintendent,
Department of State Police of the State of Oregon
et al., Appellants,
v.
CONFEDERATED TRIBES OF the UMATILLA INDIAN RESERVATION et
al., Appellees.
 No. 21459.
 United States Court of Appeals Ninth Circuit.
 Sept. 19, 1967.
 
 1
 Robert Y. Thornton, Atty. Gen., Salem, Or., Roy C. Atchinson, Asst. Atty. Gen., Portland, Or., for appellants.
 
 
 2
 Mark McClanahan, King, Miller, Anderson, Nash & Yerke, Portland, Or., for appellees.
 
 
 3
 Before CHAMBERS and MERRILL, Circuit Judges, and JAMESON, District judge.
 
 JAMESON, District Judge:
 
 4
 This is an appeal from a decree declaring that the Confederated Tribes of Umatilla Indians have a right, privilege and immunity under the Treaty of June 9, 1855,[1] to hunt for subsistence purposes on 'unclaimed lands' without restriction or control under the game laws and regulations of the State of Oregon and from an injunction issued pursuant thereto. Appellants contend that (1) the action was instituted in the wrong forum and the Tribe should have asserted its 'rights' before the Indian Claims Commission;[2] and (2) the State of Oregon has power to enforce its game laws equally among all of its citizens and the Treaty of 1855 did not grant any special immunity to the Umatilla Tribe of Indians.
 
 
 5
 Appellants argue that the statute admitting Oregon into the Union conflicted with the Treaty, the Treaty to that extent was amended, any 'rights' to hunt granted by the Treaty were 'subsequently diminished' by the admission of Oregon, and any claim for damages or other relief by reason of the diminishing of the rights was a matter for determination by the Indian Claims Commission.
 
 
 6
 While the Treaty was negotiated in 1855, it was not ratified until March 8, 1859 (12 Stat. 945). Oregon was admitted into the Union on February 14, 1859 (11 Stat. 383).[3] A Treaty has no effect until it is ratified (87 C.J.S. Treaty 5, p. 931). The Treaty in question expressly provided that it should be 'obligatory on the contracting parties as soon as * * * ratified by the President and Senate of the United States.' (12 Stat. 948).
 
 
 7
 We find no merit in appellants' contention that the Tribe's rights were diminished by the admission of Oregon into the Union. The Tribe did not have, nor is it asserting, any claim for compensation which should have been presented to the Indian Claims Commission.[4] The sole question is whether the Treaty granted the rights, privileges and immunities found by the district court.
 
 
 8
 In Maison v. Confederated Tribes of the Umatilla Indian Reservation, 9 Cir. 1963, 314 F.2d 169, cert. den. 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 60, this court construed the Treaty of 1855 with respect to fishing rights and held that to deprive the Tribe of its fishing activities, the restriction must be 'indispensable, as required by the treaty',[5] while 'a restriction of the fishing activities of other citizens of a state is valid, if merely reasonable, as required by the Fourteenth Amendment'.
 
 
 9
 The district court found that since the ratification of the Treaty, the national forest lands have been utilized by members of the Tribe for subsistence hunting in accordance with the Treaty, and it was not until 1960 or 1961 that Oregon officials attempted to interfere with the exercise of those rights; that the number of elk and deer taken by the Indians is a very small fraction of the total harvest; that in spite of a large harvest by sportsmen, the population of both elk and deer is in healthy condition; and that 'it is not necessary for the conservation of the game that Oregon's game laws and regulations be applied to hunting by members' of the Tribe.[6] The court found further that there are alternative methods of conservation and that the Tribe has expressed a willingness to consider 'any conservation data which the Oregon State Game Commission should wish to submit demonstrating a need for limiting or further restricting Indian hunting', but that the Commission has rejected this offer.[7]
 
 
 10
 The findings are amply supported by the evidence and are not questioned by appellants. Nor do appellants attempt to distinguish the Maison case. They simply contend that the decision in Maison was erroneous. We adhere to the decision in that case for the reasons therein stated.[8]
 
 
 11
 The judgment is affirmed.
 
 
 
 [1]
 Article I of the Treaty of June 9, 1855, ratified on March 8, 1859, and proclaimed on April 18, 1859, 12 Stat. 945, provides:
 'That the exclusive right of taking fish in the streams running through and bordering said reservation is hereby secured to said Indians and at all other usual and accustomed stations in common with citizens of the United States, and of erecting suitable buildings for curing the same; the privilege of hunting, gathering roots and pasturing their stock on unclaimed lands in common with citizens, is also secured to them.'
 
 
 [2]
 The Indian Claims Commission was created by Act of August 13, 1946, c. 959, 60 Stat. 1049, 25 U.S.C. 70 et seq., for determination of claims of Indian tribes against the United States accruing before the date of the Act
 
 
 [3]
 Appellants rely heavily on Ward v. Race Horse, 1896, 163 U.S. 504, 16 S.Ct. 1076, 41 L.Ed. 244, where it was held that the admission of Wyoming into the Union 'on equal terms with the other states' was in conflict with a prior treaty granting hunting privileges, and the treaty to that extent was abrogated. Here, however, Oregon was admitted before the treaty was ratified. Moreover, the strict holding of Ward v. Race Horse has been modified by implication in subsequent decisions. See United States v. Winans, 1905, 198 U.S. 371, 25 S.Ct. 662, 49 L.Ed. 1089
 
 
 [4]
 The district court held that it had jurisdiction under 28 U.S.C. 1331 relating to federal questions and 28 U.S.C. 2201, the Federal Declaratory Judgment Act. We agree. This court has jurisdiction under 28 U.S.C. 1291
 
 
 [5]
 Following Tulee v. State of Washington, 1942, 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115 and Makah Indian Tribe v. Schoettler, 9 Cir. 1942, 192 F.2d 224
 
 
 [6]
 Findings 12, 16, 17, 18 and 19 (R. 114, 116-117)
 
 
 [7]
 Findings 20 and 21. (R. 117)
 
 
 [8]
 We see no reason to discuss or cite the cases considered by this court in the Maison case. For a comprehensive discussion of the regulation of Indian Hunting and fishing 'outside the reservation', see 'Indian Hunting and Fishing Rights' by Charles A. Hobbs, 32 Geo. Wash.L.Rev. 504, 523-527 (1964)