42 F.3d 1278
 SHOSHONE-BANNOCK TRIBES, Plaintiff-Appellant,
v.
FISH & GAME COMMISSION, IDAHO, sued as: Idaho Fish & Game
Commission; Jerry Conley, individually and in his official
capacity as Director of Idaho Fish and Game; Richard
Meiers; Norm Guth; Louis Racine; Wesley Rose, et al.,
Defendants-Appellees.
 No. 94-35280.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1994.
Decided Dec. 16, 1994.
 
 Candy L. Jackson and Jeanette Wolfley, Shoshone-Bannock Tribes, Fort Hall, ID, for plaintiff-appellant.
 Clive J. Strong, Deputy Atty. Gen., and Steven W. Strack, Deputy Atty. Gen., Boise, ID, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before: BEEZER and FERNANDEZ, Circuit Judges, and ORRICK*, District Judge.
 BEEZER, Circuit Judge:
 
 
 1
 The Shoshone-Bannock Tribes (Tribes) challenge an order of the Idaho Fish and Game Commission (Fish and Game) prohibiting all fishing for Spring Chinook Salmon during the summer of 1991 in an area of the Salmon River traditionally fished by the Tribes. The district court dismissed the action as moot and as barred by the Eleventh Amendment. We have jurisdiction, 28 U.S.C. Sec. 1291, and we reverse and remand in part and affirm in part.
 
 
 2
 * The Tribes constitute a single federally recognized Indian tribe residing on the Fort Hall Indian Reservation in Idaho. Pursuant to Article 4 of the Fort Bridger Treaty of 1868 (15 Stat. 673), the Tribes retain the right to "hunt on the unoccupied lands of the United States." The parties agree that the term "hunt" encompasses the harvesting of salmon. See State v. Tinno, 94 Idaho 759, 497 P.2d 1386 (1972). In late June of 1991, the governing body of the Tribes, the Fort Hall Business Council, issued regulations permitting members of the Tribes to harvest a total of 25 salmon between July 3 and July 21, 1991 in the Middle Fork area of the Salmon River Basin. This area of unoccupied lands of the United States is located about one hundred miles from the Reservation.
 
 
 3
 In response, pursuant to its statutory authority to make necessary closure orders in "unexpected emergencies" (Idaho Code Sec. 36-104(b)(3)), Fish and Game ordered the closing of the Middle Fork area to all salmon fishing on or after July 3, 1991. The order specifically allowed members of the Tribes to harvest 25 salmon on the Yankee Fork of the Salmon River, a different area. The order expired in October of 1991.
 
 
 4
 The parties are in substantial agreement as to the plight of the Spring Chinook Salmon indigenous to the Middle Fork of the Salmon River. The fish hatch in remote tributaries of the river, migrate to the Pacific Ocean where they develop into mature fish, then return to the same tributaries where they were born to spawn. These "runs" of returning adult salmon occur annually in the late spring or summer. It is undisputed that the "runs" on the Middle Fork have been decreasing in quantity, and that, as of the spring of 1991, the 1991 run was projected to be critically small. Due to this situation, in June of 1991, the National Marine Fisheries Service recommended that the Salmon River Spring Chinook Salmon be listed as a "threatened" species under the Endangered Species Act. The Spring Chinook Salmon has since been listed as threatened.
 
 
 5
 Fish and Game's June 29, 1991 closure order states that "the harvest of even a few spawning spring chinook could adversely impact the conservation and restoration of the spring chinook resource."
 
 
 6
 On July 1, 1991, the Tribes filed suit against Fish and Game requesting a temporary restraining order to prohibit Fish and Game from enforcing its closure order on the ground that the order violated the Tribes' rights under the Fort Bridger Treaty. The district court denied the temporary restraining order. The Tribes subsequently moved for summary judgment. The district court denied the motion. The court determined that Fish and Game has the power to regulate the Tribes' fishing rights if (1) the Tribes' self regulation is insufficient to insure the conservation of the salmon, and (2) Fish and Game can show that its "regulation is a reasonable and necessary conservation measure, and that its application to the Indians is necessary to the interest of conservation." The district court found that there were disputed issues of material fact as to whether Fish and Game's closure order met these standards.
 
 
 7
 In October 1992, more than a year after the 1991 salmon season ended, Fish and Game moved to dismiss the case on the grounds that the Tribes' claims were moot and were barred by the Eleventh Amendment. The Tribes subsequently amended their complaint to add the director and commissioners of Fish and Game as defendants. The parties dispute whether the additional defendants are sued in their individual and official capacities, or only in their official capacities.
 
 
 8
 The district court referred Fish and Game's motion to a magistrate judge who recommended that the motion be granted. The magistrate judge found that the Tribes' claims for declaratory and injunctive relief were moot, that the claims for damages against Fish and Game and the state officials in their official capacities were barred by the Eleventh Amendment, and that the amended complaint did not state a cause of action against the officials in their individual capacities. The district court adopted the magistrate's report and recommendation with only a minor change. Judgment of dismissal was entered and the Tribes filed a timely notice of appeal.
 
 II
 
 9
 We review de novo all issues raised by the Tribes on appeal. Friends of the Payette v. Horseshoe Bend Hydroelectric Co., 988 F.2d 989, 996 (9th Cir.1993) (mootness); Price v. Hawaii, 939 F.2d 702, 706 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992) (determinations of motion to dismiss, jurisdictional bar under Eleventh Amendment and qualified immunity).
 
 III
 
 10
 The Tribes agree that their claims for injunctive relief relating to the 1991 salmon fishing season are moot. See Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir.1978). However, they contend that there is still a live case or controversy with respect to their claims for declaratory relief. The district court expressly, and correctly, found that any claims the Tribes had asserted for damages were not moot.
 
 
 11
 * A claim becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). The parties retain a legally cognizable interest in a declaratory relief action "only when 'the challenged government activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning part[y].' " Headwaters, Inc. v. Bureau of Land Management, 893 F.2d 1012, 1015 (9th Cir.1989) (quoting Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974)). In that circumstance, a declaration of the legal rights of the parties will provide effective relief and the claim is not moot. See id.
 
 
 12
 The Tribes' claim for declaratory relief is moot. In their opening brief, the Tribes argue that "the State of Idaho and the Defendants have continually harassed the members of the Shoshone-Bannock Tribes who are engaged in off-Reservation treaty activity ...," and that such harassment is continuing. However, as was the case in Headwaters, the actual claims pleaded by the Tribes in their complaint are narrowly focused on a single past event, the 1991 closure order. See 893 F.2d at 1014-15. Nowhere in their complaint do the Tribes mention a single incident of harassment or attempt by defendants to curtail the Tribes' treaty rights other than by reason of the adoption of the 1991 order. The Tribes' narrow claims requesting a declaration of the invalidity of the 1991 closure order are therefore moot. Id. at 1016.
 
 
 13
 This case is distinguishable from the other salmon fishing cases cited by the Tribes, United States v. Oregon, 657 F.2d 1009 (9th Cir.1981), United States v. Oregon, 718 F.2d 299 (9th Cir.1983), United States v. Washington, 761 F.2d 1404 (9th Cir.1985), cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986) and Northwest Environmental Defense Center v. Gordon, 849 F.2d 1241 (9th Cir.1988). In each of those cases, the district court either had assumed continuing jurisdiction over a river management plan to review and approve allocations of fishing rights, or there was a present remedy, such as raising or lowering future allocations, which could rectify the damage resulting from the expired orders. Neither of these factors is present here.
 
 B
 
 14
 The Tribes argue that, even if their claim is technically moot, it falls within the mootness exception for conflicts which are capable of repetition yet evading review. This exception will apply if (1) Fish and Game's action challenged by the Tribes was of too short duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the Tribes will be subjected to the same action again. Murphy, 455 U.S. at 482, 102 S.Ct. at 1183.
 
 
 15
 The first element is satisfied. The Tribes' 1991 salmon fishing season was only three weeks long, and the 1991 order expired after less than four months. It is likely that similar future conflicts would run their course in the same amount of time. However, as the district court determined, it is unlikely that a sufficiently similar action will occur in the future to satisfy the second element of the exception.
 
 
 16
 This court faced a very similar situation in Alaska Fish and Wildlife Federation and Outdoor Council, Inc. v. Dunkle, 829 F.2d 933 (9th Cir.1987), cert. denied, 485 U.S. 988, 108 S.Ct. 1290, 99 L.Ed.2d 501 (1988). In that case, the plaintiff sued the United States Fish and Wildlife Service, alleging that the Service did not have the authority to permit Native Americans to hunt migratory birds. Id. at 934-35. As with salmon fishing, the season for migratory bird hunting is short, and the season at issue was over well before the merits of the case could be addressed. Id. at 938-39. We held that the dispute was capable of repetition yet evading review because:
 
 
 17
 [Q]uestions concerning the authority of the Fish and Wildlife Service to regulate the subsistence hunting of migratory birds are likely to recur each year if not settled by this court[, and] the public interest in having this dispute resolved is strong. The parties are unsure which laws govern the subsistence hunting of migratory game birds in Alaska. Unless the law is clarified it may not be possible to develop a program that addresses the population decline of migratory birds.
 
 
 18
 Id. at 939 (internal citations omitted).
 
 
 19
 Unlike in Dunkle, the legal standards which govern the authority of a state to regulate an Indian tribe's treaty fishing rights are clear. A line of decisions by the Supreme Court involving the regulation of salmon fishing in Washington has answered this question. The state may regulate a tribe's fishing rights as necessary for conservation of the fish, but "the State must demonstrate that its regulation is a reasonable and necessary conservation measure, Washington Game Dept. v. Puyallup Tribe, 414 U.S. 44, 94 S.Ct. 330, 38 L.Ed.2d 254 (1973); Tulee v. Washington, 315 U.S. 681, 684, 62 S.Ct. 862, 864-65, 86 L.Ed. 1115 (1942), and that its application to the Indians is necessary in the interest of conservation." Antoine v. Washington, 420 U.S. 194, 207, 95 S.Ct. 944, 952, 43 L.Ed.2d 129 (1975) (emphasis in original). We have further determined that the Tribes' interest in self-governance requires that an additional requirement be met. In order to regulate a tribe's fishing rights, the state must demonstrate that the tribe's own conservation measures are insufficient to meet the needs of conservation. See United States v. Washington, 520 F.2d 676, 686 (9th Cir.1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). The district court correctly applied these principles.
 
 
 20
 The Tribes contend that it is necessary for us to define the meaning of "conservation necessity" in order to give guidance to the parties in regulating their future conduct. To the contrary, the meaning of conservation necessity in the context of salmon runs has already been determined. United States v. Oregon, 718 F.2d 299, 305 (9th Cir.1983) (conservation is "[p]reserving a 'reasonable margin of safety' between an existing level of stocks and the imminence of extinction"); United States v. Washington, 520 F.2d 676, 686 (9th Cir.1975) (conservation means "insuring optimum escapement for the perpetuation of the run"), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976).
 
 
 21
 This is not a case like Dunkle where the same parties are likely to encounter similar conflicts in the future without any clear legal standards to guide them. Here, the legal standards are well established. An application of those standards to a moot controversy whose exact facts cannot recur will not avert future conflict. The circumstances of each year's salmon run are different, and the necessary conservation measures will change with them.
 
 
 22
 Moreover, the listing of the Salmon River Spring Chinook Salmon as a threatened species by the National Marine Fisheries Service has so changed the legal dynamics of the interaction among the Tribes, the federal government and the state that it is highly unlikely that the same or a similar action by the state will occur in the future in anything like the manner in which it occurred in 1991. See 16 U.S.C. Sec. 1535. That, added to the lack of any need for further court definition of the governing legal principles, demonstrates that the situation in question here is not truly capable of repetition.
 
 IV
 
 23
 The Tribes argue that the district court erred in its determination that their claims for damages against Fish and Game and the other defendants in their official capacities were barred by the Eleventh Amendment.[1] These claims are plainly barred. Ulaleo v. Paty, 902 F.2d 1395, 1398 (9th Cir.1990) (Eleventh Amendment bars suits for retrospective relief against institutional arms of the state and state officials sued in their official capacities).
 
 
 24
 On the other hand, to the extent the Tribes' amended complaint seeks damages from the state officials in their individual capacities, such claims are not barred by the Eleventh Amendment. Price v. Hawaii, 939 F.2d 702, 706 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992).
 
 
 25
 In their reply brief, the Tribes cite our recent decision in Spokane Tribe of Indians v. Washington, 28 F.3d 991 (9th Cir.1994), petition for cert. filed 63 USLW 3161 (Aug. 29, 1994) as support for their contention that their claims against Fish and Game and the state officials are not barred. That case provides no such support. In Spokane, we held that the Eleventh Amendment does not bar a suit brought by an Indian tribe to compel a state to negotiate in good faith under the Indian Gaming Regulatory Act, 25 U.S.C. Secs. 2701-21 (IGRA). We expressly based this holding on our determination that, in enacting IGRA, Congress intended to abrogate the states' Eleventh Amendment immunity. Id. at 994-95. There is nothing in the Fort Bridger Treaty indicating such an intent, nor do the Tribes argue that there is.V
 
 
 26
 The district court held that the Tribes' amended complaint did not state a claim for damages under 42 U.S.C. Sec. 1983 against the state officials in their individual capacities. We agree, except as to defendant Conley.
 
 
 27
 The caption of the amended complaint names "JERRY CONLEY, individually and in his official capacity as Director of Idaho Fish and Game," and names all of the commissioners as "[NAME], Idaho Fish and Game Commissioner," without reference to their individual capacities. Nowhere else in the complaint do the Tribes specify whether they are suing the named persons in their individual or official capacities.
 
 
 28
 Substantively, all of the claims for relief in the complaint are stated against all defendants. The complaint states:
 
 
 29
 25. On June 29, 1991, the Defendants issued an order restricting the harvest of salmon by Fort Bridger Treaty Indians to the Yankee Fork of the Salmon River.
 
 
 30
 26. The State laws, regulations, policies, practices and orders issued and administered by the Defendants regarding the taking of fish by Fort Bridger Treaty Indians are not reasonable and necessary for public health and conservation of the species
 
 
 31
 . . . . .
 
 
 32
 28. By virtue of the foregoing, the June 29, 1991 order has caused damage to the Tribes and its [sic] members by loss of fishing opportunities, loss of subsistence fishing rights, and loss of food and ceremonial fish ...
 
 THIRD CLAIM FOR RELIEF
 
 33
 31. Defendants have acted, under color of state law, in a manner that deprives the Tribes and their members of rights, privileges, or immunities secured by the Due Process and Equal Protection Clause [sic] of the United States Constitution and the law of the United States, including the Fort Bridger Treaty, in violation of 42 U.S.C. Sec. 1983 ...
 
 RELIEF
 
 34
 32. WHEREFORE, Plaintiffs pray that this court set this matter down for an expedited and speedy hearing and upon hearing ...
 
 
 35
 G. Grant Plaintiffs their damages, costs, necessary expenses, and attorney fees.
 
 
 36
 The Tribes therefore have alleged (1) acts by the defendants (2) under color of state law (3) depriving them of federal rights, privileges or immunities (4) causing them damage. The Tribes seek an award of compensatory damages in their prayer for relief. This is sufficient to state a claim for damages under 42 U.S.C. Sec. 1983. Lopez v. Department of Health Services, 939 F.2d 881, 883 (9th Cir.1991) (elements of Sec. 1983 claim); Lokey v. Richardson, 600 F.2d 1265, 1266 (9th Cir.1979) (complaint states claim for damages under Sec. 1983 where all elements of claim are alleged and damages are requested), cert. denied, 449 U.S. 884, 101 S.Ct. 238, 66 L.Ed.2d 110 (1980).
 
 
 37
 Where state officials are named in a complaint which seeks damages under 42 U.S.C. Sec. 1983, it is presumed that the officials are being sued in their individual capacities. Price v. Akaka, 928 F.2d 824, 828 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991). Any other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred. See id.
 
 
 38
 Fish and Game argues that Akaka can be distinguished on the basis that the plaintiffs there "sought no prospective relief, expressly sought damages under Sec. 1983, disavowed any claim for state funds, and made it clear that they sought 'damages from the personal estates of the individual defendants.' " These are not valid distinctions. The only factor which the Akaka court considered in determining that the defendants were named in their individual capacities was that the complaint requested damages under section 1983. 928 F.2d at 828. Here, the Tribes did request damages under section 1983.
 
 
 39
 This, however, cannot be the end of our analysis. The Tribes specified in the caption of the amended complaint that one of the state officials, Conley, was being sued in both his individual and official capacities, while neglecting to specify in what capacity the remaining officials were named. Generally, the caption of a complaint is not controlling, but can be considered in determining the capacity in which a party has been sued. See Brandon v. Holt, 469 U.S. 464, 469 n. 11, 105 S.Ct. 873, 876 n. 11, 83 L.Ed.2d 878 (1985); California v. Harvier, 700 F.2d 1217, 1218 (9th Cir.), cert. denied, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983).
 
 
 40
 If we were to disregard the caption here, it would actually be deceptive. Since the Tribes explicitly named one of the officials in his individual capacity, those officials as to whom the caption was silent could assume that they were not being sued in their individual capacities. Under these circumstances, where the plaintiff fails to specify in the body of the complaint the capacity in which suit is brought against the defendants, we hold that what is, and is not, expressly stated in the caption controls. Cf. Sauceda v. Department of Labor & Industries, 917 F.2d 1216, 1218 (9th Cir.1990) (failure to include one of six defendants in notice of appeal made notice potentially deceptive as to whether unnamed defendant was a party to the appeal).
 
 
 41
 We hold that the Tribes' complaint is properly read to state a cause of action against defendant Conley in his individual capacity.[2] The Commissioners are named in their official capacities only, and the Tribes' claims against them are therefore barred.
 
 VI
 
 42
 Because the amended complaint states a claim against defendant Conley in his individual capacity, we must consider the question of whether he is entitled to qualified immunity. We remand the question to the district court for factual development and resolution.
 
 
 43
 The magistrate judge's report and recommendation adopted by the district court states that, even if the complaint were amended to state claims against the officials in their individual capacities, "it is highly unlikely that the Tribes would prevail" because the officials are entitled to qualified immunity. We will decide an issue of law avoided by the district court where it becomes dispositive on appeal if we are equipped to do so. RTC Transp. Inc. v. Conagra Poultry Co., 971 F.2d 368, 375 (9th Cir.1992). If we are not equipped to address the issue we will remand to the appropriate court. Id.
 
 
 44
 State officials are entitled to qualified immunity if their conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Where the defendant raises the affirmative defense of qualified immunity, the initial burden is upon the plaintiff to show that the rights were clearly established, after which the defendant bears the burden of proving that his conduct was reasonable. Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991).
 
 
 45
 There are three inquiries necessary to a determination of qualified immunity: (1) an identification of the right allegedly violated, (2) the determination whether that right was clearly established so that a reasonable official would have been aware of it and (3) the resolution of whether a reasonable official could have believed that the conduct at issue was lawful. Id. The first two questions are issues of law; the third, although ultimately a legal question, may require fact finding as well. Id. at 628.
 
 
 46
 * The Tribes assert that they have a clearly established treaty right to fish free from state regulations not necessary for public health or the conservation of the species.
 
 B
 
 47
 The Tribes' right is and was clearly established. For more than twenty years, the Fort Bridger Treaty has been interpreted to reserve to the Tribes the right to fish on unoccupied lands of the United States. State v. Tinno, 94 Idaho 759, 763, 497 P.2d 1386, 1390 (1972); United States v. Oregon, 913 F.2d 576, 586 (9th Cir.1990) (Shoshone-Bannock treaty rights "have been recognized to include the right to fish"), cert. denied, 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991). It is equally well established that the states may not limit on conservation grounds an Indian tribe's treaty right to fish except where the limitation is necessary to the preservation of the fish. Puyallup, 414 U.S. at 49, 94 S.Ct. at 334; Antoine, 420 U.S. at 207, 95 S.Ct. at 951-52. Any reasonable Idaho Fish and Game official would have known of these long established rights.
 
 C
 
 48
 The determination of whether a reasonable official could have believed that the closure order did not violate the Tribes' treaty right (if it did violate that right) requires factual determinations. Our review of a motion to dismiss is limited to the contents of the pleadings. See Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992). If, as the Tribes allege in their amended complaint, the closure order was not necessary to the conservation of the salmon, then the order violated the Tribes' clearly established right. On the other hand, if the defendants' version of the facts is true, the order was necessary to conservation and there was no violation.
 
 
 49
 Further, in denying the Tribes' motion for summary judgment, the district court already determined that there is a disputed issue of material fact as to whether the state closure order was necessary to conservation. That determination is not before us. The Tribes' claim must survive a more demanding legal standard here than on the merits (i.e., whether on June 29, 1991, a reasonable official could have believed the closure order was necessary to the conservation of the salmon, rather than whether it actually was necessary). We cannot determine from the record before us, however, what the circumstances of the salmon run appeared to be, and therefore whether a closure order could reasonably have appeared to be necessary. The inquiry requires an examination of facts not before us and upon which the parties disagree.
 
 VII
 
 50
 The order of the district court dismissing the Tribes' claim under 42 U.S.C. Sec. 1983 against defendant Conley in his individual capacity is REVERSED. We remand that claim to the district court for further proceedings consistent with this opinion. The order of the district court is AFFIRMED in all other respects.
 
 
 51
 Each party shall bear its own costs on appeal.
 
 
 
 *
 The Honorable William H. Orrick, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The district court declined to address whether the Tribes' claims against the state officials in their individual capacities were barred, finding instead that the complaint did not state such claims (see below). It also did not address the question of whether the claims for injunctive and declaratory relief were barred, having found those claims to be moot
 
 
 [2]
 The appellees argue that the complaint does not allege any actions by Conley causing damage to the Tribes. This is incorrect. As noted above, the complaint alleges actions taken by "Defendants" (presumably all of them) sufficient to state a cause of action under section 1983. While it is true that the complaint centers upon the issuance of the Commission's order, over which Conley had no control, as director of the Idaho Fish and Game Department Conley has the authority to enforce all orders of the Commission, including the order challenged by the Tribes. Idaho Code Sec. 36-106 (1994). The complaint alleges that "Defendants have prohibited or unduly restricted the Tribes and their members from taking salmon from certain areas where the salmon are plentiful." This allegation encompasses both the issuance and the enforcement of the order