**Kip R. RAMSEY, dba Tiin–Ma Logging Co.; Tiin–Ma Logging Co., Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 01–35014.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2002.

Filed Sept. 11, 2002.

David English Carmack, Department of Justice, Washington, DC, for the defendant-appellant.

A. Wray Muoio, Department of Justice, Washington, DC, for the defendant-appellant.

Kent L. Jones, Department of Justice, Washington, DC, for the defendant-appellant.

Timothy Weaver, Weaver Law Office, Yakima, Washington, for the plaintiffs-appellees.

Before BRUNETTI, TROTT, and McKEOWN, Circuit Judges.

## OPINION

TROTT, Circuit Judge.

### OVERVIEW

The United States appeals the district court's grant of summary judgment in favor of Kip R. Ramsey ("Ramsey") awarding him a refund of federal heavy vehicle and diesel fuel taxes, penalties, and interest. The government argues that Ramsey's prior federal lawsuit challenging a similar Washington *state* tax is not controlling, and that the district court erred by deferring to it. We have jurisdiction pursuant to 28 U.S.C. § 1291. As in his prior suit, Ramsey claims that the 1855 Yakama[1] Treaty exempts him from all taxes burdening his use of the public roads. We agree that the Treaty is the relevant starting point, but we disagree with Ramsey's gloss on its interpretation. The federal standard requires a definite expression of exemption stated plainly in a statute or treaty before any further inquiry is made or any canon of interpretation employed. Applying the federal standard to this case,

we find no "express exemptive language" in the relevant Treaty provision. Thus, we reverse the district court's decision and remand for entry of summary judgment in favor of the United States.

### BACKGROUND

Ramsey is a member of the federally recognized Yakama Indian Tribe ("Yakama"). He lives and works on the Yakama Reservation. He is the sole owner of Tiin-Ma Logging, which cuts timber only on the reservation. Ramsey hauls his lumber to off-reservation markets using diesel fuel trucks that exceed 55,000 pounds gross vehicle weight.

Section 4481 of the Internal Revenue Code, 26 U.S.C. § 4481[2] ("heavy vehicle tax"), requires that Ramsey pay a tax on his trucks that exceed 55,000 pounds. Section 4041[3] ("diesel fuel tax") mandates that Ramsey pay tax on diesel fuel. *See* 26 U.S.C. § 4041. For the period between 1986 and 1993, Ramsey was assessed and paid $460,702.55 in federal heavy vehicle and diesel fuel taxes, penalties, and interest.

Ramsey disputed the assessed taxes and requested a refund from the Internal Revenue Service ("IRS"), claiming the federal taxes were preempted by the Treaty with the Yakamas, June 9, 1855, 12 Stat. 951 (1859) ("Treaty"). In particular, Article III, paragraph 1, of the Treaty reads:

> [I]f necessary for the public convenience, roads may be run throughout the said reservation; and on the other hand, the right of way, with free access from

---

**1.** Although the original treaty is entitled "Treaty with the Yakimas," Yakama Tribal Resolution T-053-94 recognized the official spelling as "YAKAMA." (Jan. 14, 1994). Therefore, we use "Yakama" throughout this opinion.

**2.** § 4481 imposes a $100 per year tax for 55,000 pound vehicles, plus $22 for each additional 1,000 pounds up to 75,000 pounds.

**3.** § 4041 imposes a 15 cent per gallon tax on diesel fuel used in highway vehicles, but exempts vehicles engaged in "an off-highway business use."

the same to the nearest public highway, is secured to them; as also the right in common with citizens of the United States, to travel upon all public highways. 12 Stat. at 952–53. Ramsey argued that the Treaty exempted the Yakama from paying fees to use the public highways, citing as authority his successful challenge to a similar, state-imposed, highway-related tax in *Yakama Indian Nation v. Flores,* 955 F.Supp. 1229 (E.D.Wash.1997), which we affirmed in *Cree v. Flores,* 157 F.3d 762 (9th Cir.1998) (*Cree II*). Unswayed, the IRS denied Ramsey's request for a refund.

Ramsey filed suit in district court to settle the refund dispute. On cross motions for summary judgment, the district court held, based on *Cree II,* that the Yakama were exempt from federal taxes for the use of public highways. The district court entered judgment in favor of Ramsey. The United States appealed.

## DISCUSSION

### A. Standard of Review

"We review de novo the interpretation and application of treaty language." *Cree II,* 157 F.3d at 768. A grant of summary judgment is also reviewed de novo. *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001). We must determine, viewing the evidence in the light most favorable to the government, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.*

### B. Tax Exemption Analysis—Federal and State Standards

Ramsey argues that this case is controlled by *Cree II's* exemption of the Yakama from state heavy vehicle taxes. In the alternative, Ramsey argues that the "in common with" language in the highway use provision of the Treaty creates an exemption from the federal heavy vehicle and diesel fuel taxes.

### 1. Application of Cree II

Ramsey's argument begins with *Cree v. Waterbury,* 873 F.Supp. 404 (E.D.Wash. 1994), in which several Yakama Indians who operated logging companies, including Ramsey, claimed that Article III of the Treaty precluded application of Washington's heavy vehicle tax to the Yakama. The district court agreed with the Yakama, but based its decision on the Supreme Court's construction of the "in common with" language in the Treaty's fishing rights provision without analyzing separately the "in common with" language in the highway use provision. *Waterbury,* 873 F.Supp. at 422–23 (citing *Tulee v. Washington,* 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115 (1942), and *United States v. Winans,* 198 U.S. 371, 25 S.Ct. 662, 49 L.Ed. 1089 (1905)).

On appeal, this Court concluded that "[s]tate tax laws applied to Indians outside of Indian country, such as those at issue here, are presumed valid 'absent express federal law to the contrary.'" *Cree v. Waterbury,* 78 F.3d 1400, 1403 (9th Cir.1996) (*Cree I*) (quoting *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973)). We remanded the case and instructed the district court to "examine the Treaty language as a whole, the circumstances surrounding the Treaty, and the conduct of the parties since the Treaty was signed in order to interpret the scope of the highway right." *Cree I,* 78 F.3d at 1405. The district court was to determine if the Treaty prohibited state heavy vehicle taxation of the Yakama based on the Treaty's language and the parties' intent when they signed the Treaty.

On remand, the district court considered extrinsic evidence of the Yakama's understanding of the treaty and found that the Treaty, as understood by the Yakama, "unambiguously reserve[d] to the Yakamas the right to travel the public highways without restriction for purposes of hauling goods to market." *Flores*, 955 F.Supp. at 1248. In the alternative, the district court found that even if the Yakama's right to travel was not so unambiguously expressed in the Treaty, the Indian-friendly canons of construction required that it should be read in the Yakama's favor. *Id.* at 1249. We affirmed on these latter grounds in large part because the state offered no evidence to suggest that the parties to the Treaty intended to limit the Yakama's broad reading of this right. *Cree II*, 157 F.3d at 771.

■ In this case, the United States agrees that if *Cree II*'s interpretation of the Treaty is equally applicable to both state and federal taxes, Ramsey would be exempt from federal road use taxes. The government argues, however, that the *Cree II* analysis is inapplicable to federal taxes because there is a different standard for exemptions from federal taxation. We agree.

■ In fact, this Court recognized a distinction between the standard for state tax exemptions and federal tax exemptions in *Cree I*:

The State argues that the fees "implement federal highway financing policy," and that consequently the fees are valid unless the Treaty creates a "definitely expressed" exemption. *The State presents no authority for this court to find that the state-imposed truck fees should be judged according to the standard for federal fees.*

78 F.3d at 1403 n. 4 (emphasis added) (citation omitted). The different standards stem from the state and federal government's distinct relationships with Indian tribes. The federal government has plenary and exclusive power to deal with tribes. *Bryan v. Itasca County*, 426 U.S. 373, 376 n. 2, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). "The right of tribal self-government is ultimately dependent on and subject to the broad power of Congress." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). States, on the other hand, interact with the tribes in a more limited capacity. A state's regulatory authority over tribal members is limited by the tribal right of self-government and the preemptive effect of federal law. *Id.* at 141–142, 100 S.Ct. 2578. For this reason, all citizens, including Indians, are subject to federal taxation unless expressly exempted, *Hoptowit v. Commissioner*, 709 F.2d 564, 566 (9th Cir. 1983) (citing *Squire v. Capoeman*, 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956)), while a state's authority to tax tribal members is limited depending on the subject and location of the tax, *see McClanahan v. State Tax Comm'n*, 411 U.S. 164, 170–71, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) (holding that state taxes are not applicable to Indians on reservations absent congressional consent); *Mescalero*, 411 U.S. at 148–49, 93 S.Ct. 1267 ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory State law[s].").

■ The applicability of a federal tax to Indians depends on whether express exemptive language exists within the text of the statute or treaty. The language need not explicitly state that Indians are exempt from the specific tax at issue; it must only provide evidence of the federal government's intent to exempt Indians from taxation. Treaty language such as "free from incumbrance," "free from taxation," and "free from fees," are but some examples of express exemptive language

required to find Indians exempt from federal tax.

Only if express exemptive language is found in the text of the statute or treaty should the court determine if the exemption applies to the tax at issue. At that point, any ambiguities as to whether the exemptive language applies to the tax at issue should be construed in favor of the Indians. In *Karmun v. Commissioner*, 749 F.2d 567, 569 (9th Cir.1984), we noted that "[n]otwithstanding the canon of interpretation that resolves ambiguities in statutes and treaties in favor of Indians, we have recognized that the intent to exempt income of Indians from taxation must be clearly expressed." In addition, we stated that "[p]olicy considerations by themselves are insufficient to justify the implication of a tax exemption absent express exemptive language." *Id. Confederated Tribes of Warm Springs Reservation v. Kurtz*, 691 F.2d 878, 881 (9th Cir.1982) (noting that the intent to exempt must be definitely expressed before the court can construe the statute or treaty to create an exemption), *United States v. Anderson*, 625 F.2d 910, 913 (9th Cir.1980) (noting that the canon of construction reading statutes and treaties in favor of the Indians does not come into play absent express exemptive language). Therefore, when reviewing a claim for a federal tax exemption, we do not engage the canon of construction favoring the Indians unless express exemptive language is first found in the text of the statute or treaty. Only if such language exists, do we consider whether it could be "reasonably construed" to support the claimed exemption. *See Hoptowit*, 709 F.2d at 566 (concluding that treaty language setting apart tribal lands "for the exclusive use and benefit" of the tribe could not be construed to support an exemption from federal income tax).

When a court interprets a state's taxation of Indians' off-reservation activities, the court determines if there is an express federal law prohibiting the tax. The federal law must be interpreted in the light most favorable to the Indians, and extrinsic evidence may be used to show the federal government's and Indians' intent. Unlike the federal standard, there is no requirement to find express exemptive language *before* employing the canon of construction favoring Indians.

In *Cree II* this Court implemented the Indian-friendly canon of construction and analyzed the history of the Treaty and the understanding of the Yakama to find an "express federal law" which exempted the Yakama from state taxation. *Cree II*, 157 F.3d at 769. We held that the Yakama Treaty should be interpreted "to guarantee the Yakamas the right to transport goods to market over public highways without payment of fees for that use." *Id.* Ramsey argues that *Cree II*'s Treaty interpretation, finding an "express federal law" exempting the Yakama from state heavy vehicle taxes, controls this case when looking for "express exemptive language" to exempt the Yakama from similar federal taxation. *Cree II*'s interpretation, however, is not binding on the question of *federal* taxation because the initial inquiry when exempting Indians from *federal* taxes is whether the federal law in question contains express exemptive language at all. The canon of construction favoring the Indian when ambiguities are present in a statute or treaty does not come into play absent such language. We are not persuaded that the Supreme Court's recent reference in *Chickasaw Nation v. United States*, 534 U.S. 84, 122 S.Ct. 528, 535–36, 151 L.Ed.2d 474 (2001), to potential differences between the application of the Indian-friendly canons to congressional statutes and to Indian treaties has changed our long standing precedent in the treaty context which has already resolved any conflicts between those canons and the

express exemption requirement. *See, e.g., Squire,* 351 U.S. at 6, 76 S.Ct. 611; *Confederated Tribes,* 691 F.2d at 881. Thus, *Cree II*'s analysis of the same Treaty provision utilizing extrinsic evidence and interpreting the provision most favorably to the Yakama does not control our analysis.

### 2. Application of the Federal Standard

 Applying the federal standard, we hold that the relevant Treaty provision contains no "express exemptive language." The Treaty simply states that "free access from the [reservation] to the nearest public highway, is secured to [the Yakama]; as also the right, in common with citizens of the United States, to travel upon all public highways." 12 Stat. at 953. This provision does not provide express language from which we can discern an intent to exempt the Yakama from federal heavy vehicle and diesel fuel taxation. The only exemptive language in the Treaty is the "free access" language. "Free access," however, does not modify the right to travel upon the public roadways. Indeed, the clause granting the Yakama the "right, in common with citizens of the United States, to travel upon all public highways" contains no exemptive language. "In common with" does not express an intent to exempt the Yakama from taxes. Thus, there is no express exemptive language in the Treaty to exempt the Yakama from the generally applicable, federal heavy vehicle and diesel fuel taxes. Absent any express exemptive language to the contrary, the taxes at issue apply to the Yakama, and the district court's judgment in favor of Ramsey must be reversed and summary judgment entered in favor of the United States.

### CONCLUSION

Ramsey's prior federal case, analyzing a state's heavy vehicle tax and the Yakama Treaty, is not binding in this lawsuit dealing with a similar federal tax. When the Treaty is analyzed under the federal standard, there is no express language exempting the Yakama from the heavy vehicle and diesel fuel taxes, nor can we find any broader exemptive language that could be reasonably construed as encompassing such an exemption. Thus, we remand for entry of summary judgment in favor of the United States.

REVERSED and REMANDED.