TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| | : | |
| OPINION | : | |
| | : | No. 25-102 |
| of | : | |
| | : | May 28, 2026 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| HEATHER THOMAS | : | |
| Deputy Attorney General | : | |

The HONORABLE ANAMARIE ÁVILA FARÍAS, MEMBER OF THE STATE ASSEMBLY, has requested an opinion regarding the licensing requirements for a federally recognized tribe to participate in California's commercial cannabis industry.

**QUESTION PRESENTED AND CONCLUSION**

May a federally recognized Indian tribe located exclusively within the exterior boundaries of the State of California conduct intrastate commercial cannabis activity with state licensees off tribal lands without obtaining a commercial cannabis license from the California Department of Cannabis Control, if the tribe has adopted laws substantially comparable to California's cannabis regulatory framework?

No. With limited exceptions, California law requires every entity that engages in intrastate commercial cannabis activity with California licensees to hold a license issued by the Department of Cannabis Control. To engage in such activity off tribal lands, a tribe must hold a California commercial cannabis license.

1

# BACKGROUND

The jurisdictional relationship between tribes and state and federal government is "of a complex character."[1] The U.S. Supreme Court "has consistently recognized that Indian tribes retain 'attributes of sovereignty over both their members and their territory.'"[2] "[T]ribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States."[3] But "state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided."[4] Off tribal lands, states have greater authority over tribal activities, as discussed in more detail below.[5] In either circumstance, tribes retain sovereign immunity against suit "absent a clear waiver by the tribe or congressional abrogation."[6]

California has been at the forefront of legalizing cannabis at the state level. It became the first state to legalize cannabis for medicinal use when voters passed Proposition 215 in 1996.[7] In 2016, voters approved Proposition 64, which legalized recreational cannabis use for adults 21 and older within specified limits.[8] Shortly thereafter, in 2017, the Legislature consolidated Proposition 64 with the earlier legislation governing medicinal use to create a single commercial cannabis framework: the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA).[9] Relevant here, MAUCRSA generally requires any entity engaged in commercial cannabis activities within California to obtain a state license.[10] Under regulations implementing

---

[1] *United States v. Kagama* (1886) 118 U.S. 375, 381.

[2] *California v. Cabazon Band of Mission Indians* (1987) 480 U.S. 202, 207 (*Cabazon*).

[3] *Washington v. Confederated Tribes of Colville Indian Reservation* (1980) 447 U.S. 134, 154.

[4] *Cabazon*, *supra*, 480 U.S. at p. 207.

[5] 21 Cal.Jur.3d (2026) Indians, § 21.

[6] O*kla. Tax Com. v. Citizen Band Potawatomi Indian Tribe of Okla.* (1991) 498 U.S. 505, 509.

[7] Cal. Dept. of Cannabis Control, California's Cannabis Laws, https://cannabis.ca.gov/cannabis-laws/laws-and-regulations/ (as of May 28, 2026); Health & Saf. Code, § 11362.5; 106 Ops.Cal.Atty.Gen. 119 (2023); Ryan B. Stoa, *Tribal Cannabis Agriculture Law* (2023) 2023 Utah L.Rev. 1075, 1077.

[8] See, e.g., Health & Saf. Code, §§ 11018, 11357, 11358, 11359, 11360, 11362.1, 11362.2, 11362.3, 11362.4; see also California Courts, Proposition 64: The Adult Use of Marijuana Act, https://www.courts.ca.gov/prop64.htm (as of May 28, 2026).

[9] Bus. & Prof. Code, § 26000 et seq.; Ofc. Of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 94 (2017-2018 Reg. Sess.) as amended June 9, 2017, p. 1.

[10] Bus. & Prof. Code, § 26037.5, subd. (a).

25-102

MAUCRSA, a tribe applying for a commercial cannabis license must submit a written waiver of any sovereign immunity defense it may have or assert in any state administrative or judicial enforcement action brought against the tribe under state law and regulations governing commercial cannabis activity.[11]

## ANALYSIS

The question here is whether a federally recognized Indian tribe may lawfully conduct commercial cannabis activity with California licensees off tribal lands within the state, if the tribe has adopted laws that impose requirements substantially comparable to the California cannabis regulatory framework.[12]  We conclude that, to engage in such activities off tribal lands, a tribe must obtain a commercial cannabis license issued by the Department of Cannabis Control.  California law generally requires any entity engaged in commercial cannabis activities to obtain a state-issued license.  And the state has the authority to apply its generally applicable cannabis licensing requirements to tribal activities off tribal lands.

**Under California law, a tribe must obtain a state commercial cannabis license to engage in commercial activity with other licensed entities**

Legal cannabis activities in California fall into three overlapping categories:  adult personal use, personal medicinal use, and commercial activity.  First, adult personal use is legalized within certain, narrow limits.  People age 21 and older can possess, process, transport, purchase, obtain, or give away to other adults age 21 and older up to 28.5 grams of nonconcentrated cannabis or eight grams of concentrated cannabis, as well as grow six living plants.[13]  Second, individuals with a physician's recommendation or approval can use and cultivate cannabis for personal medicinal purposes.[14]  Physicians can recommend an amount of cannabis consistent with the patient's needs, and patients and caregivers are not subject to criminal prosecution or other penalty for medicinal cannabis activity consistent with California law.[15]

Third, a person or entity engages in commercial cannabis activity if they cultivate, possess, manufacture, distribute, process, store, laboratory test, package, label, transport,

---

[11] Cal. Code Regs., tit. 4, § 15009, subd. (a).

[12] This opinion does not address the application of state law to cannabis activities on tribal lands.  We note that the Department of Justice is currently litigating related questions.

[13] Health & Saf. Code, §§ 11362.1, 11362.2.

[14] Health & Saf. Code, § 11362.5, subds. (b)(1)(A), (d).

[15] Health & Saf. Code, §§ 11362.77, 11362.765; *People v. Kelly* (2010) 47 Cal.4th 1008.

3

deliver, or sell cannabis or cannabis products.[16]  Because the definition includes cannabis activities such as possession and cultivation, it describes activities that may also fall under the personal adult or personal medicinal use provisions broadly described above. These activities may be conducted without a license pursuant to those regimes.[17] Because personal adult and personal medicinal activities are not the subject of this request, we do not discuss them here.

Instead, this opinion addresses commercial cannabis activities such as large-scale cannabis cultivation, laboratory testing, storage, or distribution.  To engage in these activities, an entity must obtain and maintain a license from the California Department of Cannabis Control and comply with MAUCRSA.[18]  That Act "establish[es] a comprehensive system to control and regulate" commercial cannabis activity concerning both medicinal and adult use.[19]  All commercial activity must be conducted between licensees, subject to exceptions not relevant here.[20]  Licensees must operate within the scope of their license, and they may conduct commercial cannabis activities only "on the premises licensed for the activity."[21]

Otherwise, cannabis remains a controlled substance under state law.[22]  Those who engage in commercial cannabis activity without a license, or who aid and abet such

---

[16] Bus. & Prof. Code, § 26001, subd. (q); 37 Cal.Jur.3d (2026) Health & Sanitation, § 28; but see Bus. & Prof. Code, § 26033, subd. (a).  Commercial cannabis activity also includes "acting as a cannabis event organizer for temporary cannabis events."  (Bus. & Prof. Code, § 26001, subd. (q).)

[17] Health & Saf. Code, § 11362.1; Bus. & Prof. Code, §§ 26033, 26037.5.

[18] Bus. & Prof. Code, §§ 26037.5, subd. (a), 26030, subd. (a), 26000, subds. (b), (c), 26001, subds. (ah), (ai), (ao); Cal. Code Regs., tit. 4, § 15000.1, subd. (a).

[19] Bus. & Prof. Code, § 26000, subd. (b); see generally Bus. & Prof. Code, § 26000 et seq.; Cal. Code Regs., tit. 4, § 15000 et seq.

[20] For example, a licensed retailer and a licensed microbusiness may sell cannabis to customers or nonprofits.  (Cal. Code regs., tit. 4, §§ 15000.1, subd. (b), 15404, 15409.) MAUCRSA also exempts other entities from licensing requirements, including qualified patients, primary caregivers, and those who cultivate cannabis consistent with provisions governing personal adult recreational use, as well as certain nonprofits who obtain temporary local licenses to provide cannabis to low-income persons.  (Bus. & Prof. Code, §§ 26033, 26037.5, subd. (b), 26070.5, subd. (b).)

[21] Bus. & Prof. Code, § 26053, subd. (a); Cal. Code Regs., tit. 4, § 15000.1, subds. (b), (c).

[22] Health & Saf. Code, §§ 11007, 11054, subd. (d)(13).

4

unlicensed activities, can face civil and criminal penalties.[23]  State law continues to prohibit activities such as possession for sale; planting, harvesting, or processing; and unlawful transportation, importation, sale, or gift of cannabis outside the framework described above.[24]

Turning to the question before us, our requestor has asked whether a tribe may conduct commercial cannabis activity with California licensees off tribal lands without obtaining a state-issued license, if the tribe has adopted laws substantially comparable to California's cannabis regulatory framework.  Under current law, it cannot.  As discussed, cannabis is a controlled substance, and cannabis activity remains illegal outside of the framework described above.  That framework generally requires all commercial cannabis activity to occur only between California licensees.[25]  And a licensee who operates contrary to the law may face civil or criminal penalties.[26]  In short, state law does not allow a California cannabis licensee to lawfully conduct commercial cannabis activity with an entity who holds a commercial cannabis license issued by a tribal authority instead of the state.

Finally, state law expressly contemplates tribal participation in the commercial cannabis market as California licensees.  Department of Cannabis Control regulations specifically reference federally recognized tribes, requiring them to waive any relevant sovereign immunity defense to obtain a commercial cannabis license.[27]  The inclusion of tribes in the state's commercial cannabis licensing regulations as licensees reinforces our

---

[23] Bus. & Prof. Code, §§ 26030, 26038, subds. (a), (e); see generally Bus. & Prof. Code, §§ 26030-26039.6.

[24] Health & Saf. Code, §§ 11359, 11358, 11360.  Cannabis remains a controlled substance under federal law.  (Federal Controlled Substances Act, 21 U.S.C. § 801 et seq.)  While analysis of any potential application of federal law to tribal cannabis activity is beyond the scope of this opinion, we note that California courts have held that the federal Controlled Substances Act does not preempt California's cannabis laws.  (See *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734; *Kirby v. Cnty. of Fresno* (2015) 242 Cal.App.4th 940*; City of Garden Grove v. Superior Ct.* (2007) 157 Cal.App.4th 355.)

[25] Bus. & Prof. Code, § 26037.5 ("A person or entity shall not engage in commercial cannabis activity without a state license issued by the department pursuant to this division"); Cal. Code Regs., tit. 4, § 15000.1, subd. (b) ("Commercial cannabis activity shall only be conducted between licensees").  As described above, the law contains exceptions to the license requirement that are not relevant here.  (See *ante*, fn. 20.)

[26] Bus. & Prof. Code, §§ 26030, 26038, subd. (e); see generally Bus. & Prof. Code, §§ 26030-26039.6.

[27] Cal. Code Regs., tit. 4, § 15009, subd. (a).

conclusion that tribes without a state license may not engage in commercial cannabis activities.[28]

**California has the authority to require Department of Cannabis Control licensees to conduct commercial cannabis activities occurring off tribal lands only with state-licensed entities.**

We next consider whether applying state licensing laws to a tribe's commercial cannabis activities conducted off tribal lands is consistent with limits on state authority concerning tribal activities. We conclude that it is.

As noted above, tribes have a complex jurisdictional relationship with states and the federal government. Tribes have the inherent power to preserve their own self-government, and they have powers granted or reserved to them by Congress.[29] The existence and degree of a state's authority regarding tribal activities can be a complex question, particularly if the activity at issue occurs on tribal land.[30]

Off tribal land, however, "state power over Indian affairs is considerably more expansive."[31] When a tribe "travels beyond its reservation borders for the purpose of carrying on a business enterprise," it "does not have expansive immunity from ordinary

---

[28] See generally *In re J.W.* (2002) 29 Cal.4th 200, 209 (under expressio unius principle, "the expression of one thing in a statute ordinarily implies the exclusion of other things").

[29] *Montana v. United States* (1981) 450 U.S. 544, 563-564 ("Thus, in addition to the power to punish tribal offenders, the Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. . . . But exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations . . . cannot survive without express congressional delegation"); see also *Mescalero Apache Tribe v. Jones* (1973) 411 U.S. 145, 148 (*Mescalero*); *Rice v. Rehner* (1983) 463 U.S. 713, 718.

[30] American Indian Law Deskbook, ch. 5, General Civil Regulatory Jurisdiction, Introduction ("Among the most difficult and recurring issues in Indian law is the scope of federal, tribal, and state civil regulatory authority in Indian country. . . . [E]ven today there remain significant differences within the [Supreme] Court both as to governing principles and how accepted principles should be applied"); see also *White Mountain Apache Tribe v. Bracker* (1980) 448 U.S. 136, 151 (*Bracker*) ("[T]hough the reservation boundary is not absolute, it remains an important factor to weigh in determining whether state authority has exceeded the permissible limits").

[31] *Washington v. Confederated Tribes of Colville Indian Reservation*, *supra*, 447 U.S. at p. 162.

6

regulation that applies to businesses throughout the State."[32]  Instead, as the U.S. Supreme Court held in *Mescalero Apache Tribe v. Jones*, tribal members "going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State," "[a]bsent express federal law to the contrary."[33]  Applying that rule, the Court in *Mescalero* upheld a state's taxation of a ski resort operated by a tribe off tribal lands.[34]  The Ninth Circuit has similarly upheld state laws taxing and regulating tribal cigarette sales off tribal lands.[35]

Here, our focus is likewise on commercial activities occurring off tribal lands. The state may therefore enforce its law governing those activities if it satisfies the rule from *Mescalero*.  That rule has two prongs:  The state law must be nondiscriminatory, and it cannot be prohibited by express federal law to the contrary.

Under the first prong, an application of state law is nondiscriminatory when it treats tribes or tribal entities the same as other similarly situated entities.[36]  So, for example, a state law that treats tribal law enforcement entities differently from law enforcement entities of other jurisdictions is discriminatory.[37]  On the other hand, requirements that every entity that distributes cigarettes must obtain state licensing are nondiscriminatory.[38]  Here, California's commercial cannabis licensing scheme treats all similarly situated entities the same because all participants must hold a license issued by California to participate in the market.  Therefore, state law is nondiscriminatory.

---

[32] *Big Sandy Rancheria Enterprises v. Bonta* (9th Cir. 2021) 1 F.4th 710, 729, internal quotation marks omitted (*Big Sandy Rancheria Enterprises*).

[33] *Mescalero*, *supra*, 411 U.S. at pp. 148-149; *Twenty-Nine Palms Band of Mission Indians v. Blanche* (9th Cir. May 6, 2026, No. 25-2340) _ F.4th _ [2026 WL 1239758] (*Blanche*).

[34] *Mescalero*, *supra*, 411 U.S. at pp. 155, 158.

[35] See *Big Sandy Rancheria Enterprises*, *supra*, 1 F.4th at pp. 728-729; *King Mountain Tobacco Co., Inc. v. McKenna* (9th Cir. 2014) 768 F.3d 989, 998 (*King Mountain Tobacco*).

[36] *King Mountain Tobacco*, *supra*, 768 F.3d at p. 993 (state statute requiring all cigarette sellers within the state to pay money into an escrow fund was nondiscriminatory).

[37] *Cabazon Band of Mission Indians v. Smith* (9th Cir. 2004) 388 F.3d 691, 697-701 (under state law at the time, a statute that limited display of emergency light bars to "authorized emergency vehicles" was discriminatory because tribal law enforcement vehicles were treated differently from law enforcement entities from bordering states).

[38] *Big Sandy Rancheria Enterprises*, *supra*, 1 F.4th at pp. 728-729.

25-102

Under the second prong, "express federal law to the contrary" exists if federal law grants or reserves for the tribe a right or privilege that is inconsistent with state law.[39] For example, in *People v. McCovey*, California criminally charged a member of the Hoopa Valley Reservation who sold fish off tribal lands that were caught on tribal lands with a type of fishing net prohibited under state law.[40] But federal regulations expressly permitted tribal members to fish on tribal lands using the prohibited net, then sell the fish off tribal lands.[41] The California Supreme Court held that the "comprehensive" and "pervasive" federal regulatory scheme constituted an "express federal law to the contrary" that prohibited the state from enforcing its fishing net requirements upon tribal members.[42]

In cases where federal law is ambiguous, it "must be interpreted in the light most favorable to the Indians, and extrinsic evidence may be used to show the federal government's and Indians' intent."[43] For example, the Ninth Circuit held that a treaty between the federal government and a particular tribe that reserved for the tribe the right "to travel upon all public highways" created an express right to travel.[44] Upon close, fact-specific examination of extrinsic evidence to determine the extent of that right, the court held that the treaty prohibited the state from enforcing its truck licensing and permit fee requirements upon the tribe.[45] In a different case, however, the Ninth Circuit held that the same treaty was silent on the tribe's right to trade, and therefore it did *not* contain an express provision exempting the tribe from a state law governing cigarette sales.[46]

Here, express federal law does not prohibit the state from enforcing its cannabis licensing laws upon tribal activities off tribal land.[47] We are not aware of any federal law or treaty that reserves for tribes the right to engage in commercial cannabis activity off

---

[39] *King Mountain Tobacco*, *supra*, 768 F.3d at pp. 994-997; *Ramsey v. United States* (9th Cir. 2002) 302 F.3d 1074, 1077; *Cree v. Waterbury* (9th Cir. 1996) 78 F.3d 1400, 1403-1405; *People v. McCovey* (1984) 36 Cal.3d 517.

[40] *People v. McCovey*, *supra*, 36 Cal.3d at p. 522.

[41] *Id*. at pp. 523-524, 526, 530-531.

[42] *Id*. at pp. 526, 534-535 (unlike *Mescalero*, "'express federal law to the contrary' is present here. The federal regulations expressly govern off-reservation sales of reservation-caught fish and impose sanctions at odds with state law").

[43] *Ramsey v. United States*, *supra*, 302 F.3d at p. 1079.

[44] *Cree v. Flores* (9th Cir. 1998) 157 F.3d 762, 764, 774.

[45] *Ibid.*

[46] *King Mountain Tobacco*, *supra*, 768 F.3d at p. 998.

[47] As noted above, California courts have held that the federal Controlled Substances Act does not preempt California cannabis law, as a general matter. (See *ante*, fn. 24.)

8

tribal land without obtaining a state license.  Therefore, express federal law does not prohibit enforcement of California's commercial cannabis licensing requirements off tribal lands under the second prong of *Mescalero*.[48]

In conclusion, the question before us asks whether the State of California may require tribes to become California-licensed to engage in commercial cannabis activity with California licensees off tribal land.  California can so require.  As discussed above, California's commercial cannabis licensing requirement satisfies the rule from *Mescalero* because it is a nondiscriminatory law that is not preempted by federal law.  And courts have upheld analogous state laws as applied to tribal activities off tribal land, such as state fishing requirements, state licensing requirements for cigarette sales, and state taxes on business income.[49]  Thus, tribes must obtain a California license to engage in commercial cannabis activity with California cannabis licensees off tribal lands.[50]

Some observers urged us to reach a different conclusion.  In their view, allowing tribes to conduct commercial cannabis activity off tribal lands without obtaining a California license would best respect tribal sovereignty.[51]  As a general matter, tribal

---

[48] We note, without analyzing, that California may have some authority to enforce state law *on* tribal land, particularly against nontribal members.  (See, e.g., *Bracker*, *supra*, 448 U.S. at pp. 141-145.)  Because the question of state authority over cannabis activities on tribal land is beyond the scope of this opinion, we do not address it here.

[49] *Organized Village of Kake v. Egan* (1962) 369 U.S. 60, 76 (state fishing laws); *Big Sandy Rancheria Enterprises*, *supra*, 1 F.4th at pp. 728-729 (tribe-to-tribe cigarette sales treated as "off tribal land" and thus subject to state law); *Mescalero*, *supra*, 411 U.S. at pp. 148-155 (ski resort off tribal land subject to state taxes); see also *Michigan v. Bay Mills Indian Community* (2014) 572 U.S. 782, 795-796 (while the state could not sue the tribe due to its sovereign immunity, the state had a number of other civil and criminal tools at its disposal, including licensing requirements, to enforce state law against a tribe or tribal members for a tribal casino located off tribal land).

[50] Some states have addressed the issue of tribal participation in state cannabis markets by authorizing their governor to enter into a government-to-government compact with tribes.  These compacts allow an entity licensed by a tribe to engage in commercial cannabis activity with state-licensed entities.  Such legislation exists in Nevada, Washington, Michigan, and Oregon. (See N.R.S. § 223.250; Wash. Rev. Code Ann. § 43.06.490; O.R.S. § 475C.521; M.C.L.A. § 333.27957, subd. (h)(2)(b) [authorizing the Michigan cannabis regulatory agency to enter into tribal compacts].)  In California, similar bills were introduced in 2017, but none were enacted.  (See Assem. Bill No. 924 (2017-2018 Reg. Sess.); Assem. Bill No. 1096 (2017-2018 Reg. Sess.).)

[51] See Elk Valley Rancheria, California, letter to Heather Thomas, Deputy Attorney General, Opinion Unit, California Department of Justice, May 6, 2024, p. 2 (describing

(continued…)

9

sovereignty refers to a tribe's ability to govern its own internal relations, by creating its own laws to regulate activities on its own lands and to be governed by them.[52] But where, as here, tribal activities occur off tribal lands, courts have concluded that state regulation does not ordinarily infringe upon tribal sovereignty.[53] The Ninth Circuit has held, for example, that licensing requirements in an analogous context—wholesale cigarette sales off tribal lands—were consistent with tribal sovereignty if the laws satisfied the rule from *Mescalero* discussed above.[54] Tribal sovereignty principles therefore do not prevent California from enforcing its licensing requirements for commercial cannabis activity occurring off tribal land.

Observers may also cite Public Law 280 (PL 280), a federal law that grants certain states, including California, relatively broad criminal jurisdiction, and more limited civil jurisdiction, over tribal members on tribal lands.[55] Under PL 280, the state's authority concerning tribal activities on tribal lands turns on whether a particular law is criminal and prohibitive in nature, or civil and regulatory.[56] However, because the question concerns only commercial cannabis activity off tribal lands, we need not engage in that inquiry here. Thus, we do not further analyze or comment on California's authority under PL 280 to enforce state cannabis law on tribal land.

---

tribal sovereignty as "a fundamental principle recognized by the federal and state governments" that "grants tribes the authority to self-govern and make decisions about their own economic development").

[52] See, e.g., *New Mexico v. Mescalero Apache Tribe* (1983) 462 U.S. 324, 332 ("We have continued to stress that 'Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory.' . . . The sovereignty retained by tribes includes 'the power of regulating their internal and social relations'") (finding that concurrent state jurisdiction over hunting and fishing by non-members on tribal lands would interfere with tribal self-governance).

[53] *Big Sandy Rancheria Enterprises*, *supra*, 1 F.4th at pp. 728-729 (concluding that tribal sovereignty principles did not prohibit the state from regulating tribal sales of cigarettes off tribal land); *Blanche*, *supra*, __ F.4th at __ [2026 WL 1239758] (same).
[54] *Big Sandy Rancheria Enterprises*, *supra*, 1 F.4th at pp. 728-729.

[55] Pub.L. No. 83-280 (Aug. 15, 1953) 67 Stat. 588, codified at 11 U.S.C. § 1162 and 28 U.S.C. § 1360; *Bryan v. Itasca County, Minnesota* (1976) 426 U.S. 373.

[56] *Cabazon*, *supra*, 480 U.S. at pp. 207-212, superseded by statute; *Doe v. Mann* (9th Cir. 2005) 415 F.3d 1038, 1053-1058.

## CONCLUSION

For these reasons, we conclude that tribes must obtain a license from the Department of Cannabis Control to engage in commercial cannabis activity with California cannabis licensees off tribal lands.